# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 04-CV-2685 (JFB) (VVP)

————————————

KATALIN URANYI,

Plaintiff,

VERSUS

MULTIPLAN, INC.,

Defendant.

————————————

## MEMORANDUM AND ORDER
June 12, 2006

————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Katalin Uranyi brings this action alleging employment discrimination on the basis of her age and disability in violation of the Federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*., the New York State Human Rights Law, N.Y. Exec. § 296(1), and the New York City Human Rights Law, against defendant Multiplan, Inc. ("Multiplan"). Defendant now moves for summary judgment on all claims. For the foregoing reasons, the Court finds that genuine issues of material fact exist as to all claims. Accordingly, defendant's motion for summary judgment is denied.

## I. BACKGROUND

Construed in a light most favorable to plaintiff, the non-moving party, the facts are as follows:

Multiplan is a health care cost management company that provides services to the nation's insured and self-funded health plans. (Def.'s Rule 56.1 Statement ("Def.'s 56.1") ¶ 1.)[1] Plaintiff was hired by Multiplan on October 17, 1994 in defendant's Repricing Department. (*Id.* ¶ 3.) Plaintiff suffers from polio that she developed as a child, and as a result, plaintiff cannot walk without a brace. (Pl. Decl. ¶ 5.)

Plaintiff was promoted to the position of Quality Assurance Analyst on May 17, 1995. (*Id.* ¶ 4.) At plaintiff's request, in 1997, she was transferred to the Information Technology Department ("IT") as an Application Support Specialist. (*Id.* ¶ 5.) In that position, plaintiff was primarily responsible for supporting the Accounting

---

[1] Where only one party's 56.1 Statement is cited, the other party does not dispute the facts alleged.

Department's use of a computerized accounting system called Great Plains ("GP"). (*Id.* ¶ 6.) Starting in 1998, in addition to supporting the use of GP, plaintiff was assigned to perform Electronic Data Interchange ("EDI") tasks. (*Id.* ¶ 7.) The EDI software, which was introduced and developed by Larry Harley, Assistant Vice President of the IT Department and head of the EDI Group, was relatively new to Multiplan in 1998. (*Id.* ¶¶ 9, 10.) Since 1998, the amount of EDI work has increased significantly. (*Id.* ¶¶ 11, 12.) In April 2002, plaintiff was transferred to the newly formed EDI Group. (Pl. 56.1 ¶ 15; Harley Aff. ¶ 7.) Plaintiff was 47-years old at the time of her transfer. (Def.'s 56.1 ¶ 16.) Eliza Lansdale, EDI Support Manager, became plaintiff's immediate supervisor shortly after the transfer. (*Id.* at ¶ 17.)

On February 17, 2003, Rudy Gantek joined Multiplan as the Vice President of IT. (*Id.* ¶ 28.) Shortly after Gantek's arrival, the management team, which included Mr. Gantek, Mr. Harley, and Ms. Lansdale, "refine[d] and upgrade[d] the job descriptions" (Gantek Dep. at 18-19) in the EDI Group and added "different levels of staff" (Harley Dep. at 10). They rewrote and upgraded the job responsibilities of the EDI Analysts. (Def.'s 56.1 ¶ 31.) The positions of EDI Analyst I, EDI Analyst II and EDI Analyst III were created. (*See* O'Neil Decl. ¶ 7, Ex. F.)

At the time the management team decided to upgrade the EDI Analyst positions, there were three individuals doing EDI analyst work – the plaintiff, Arthur Yusupov, and Victor Walter. (Lansdale Dep. at 52; Harley Dep. at 12-13.) According to defendant, in the spring or summer of 2003, when discussing the changes in the group, Lansdale, Harley and Gantek decided to terminate Walter's and plaintiff's employment. (Lansdale Dep. at 51-52.) Walter was

terminated on September 1, 2003. (Lansdale Dep. at 52.) Plaintiff was not terminated at that time. (*Id.*)

Through the use of an outside IT recruiting agency, the management team hired Roxanne Williams and Greg Flynn to fill the newly created EDI Analyst II and EDI Analyst III positions. (Harley Aff. ¶ 12; Lansdale Dep. at 56.) Multiplan hired Ms. Williams as an EDI Analyst III in September 2003 to replace Victor Walter. (Williams Dep. 11-12; Harley Dep. 15.) Williams, who was born on August 6, 1958, was over 40 when hired by Multiplan. (Def.'s 56.1 ¶ 37; Williams Dep. at 6.)

Flynn was also hired through a recruiter, and began working at Multiplan on November 3, 2003. (Flynn Dep. at 7-8.) Flynn had experience with the technology, and more specifically, with the X12 format. (*Id.* at 11, 15-18.) Flynn was moved into the EDI Analyst II position. (Harley Dep. at 29.)

On or around August 28, 2003, plaintiff fell, breaking her polio brace and fracturing her right arm. (Uranyi Decl. ¶ 5, Pl.'s Compl. ¶ 13.) As a result, plaintiff was unable to type or walk and was placed on disability leave from September 2, 2003, until December 16, 2003. (Uranyi Decl. ¶ 5; Compl. ¶ 14.) When she returned to her job in December, plaintiff was no longer disabled from her arm injury and she did not require any accommodations to perform her duties. (Def.'s 56.1 ¶¶ 68-69; Pl. Dep. at 92.)

After the redesigning of the EDI department and the termination of Walter, two people remained who were qualified for the EDI Analyst I position, the plaintiff and Yusupov. However, defendant only created one EDI Analyst I position. (Lansdale Dep. at 62.) Harley testified that defendant decided to retain Yusupov over plaintiff primarily for the following reasons:

His working with clients is, I'm going to say, you know, customer service skills and his I guess willingness to do whatever it took to get the job done and whatever it took to satisfy the customer.

(Harley Dep. at 27.) Harley further testified:

There were two people who qualified for the, as I stated before, the EDI one position and those two people were [Yusupov] and [plaintiff] and for the reasons I stated before, we determined [Yusupov] was a better fit.

(Harley Dep. at 29.) Harley also testified that plaintiff's "attendance was perfect" and she would work from home. (Harley Dep. at 19.) Lansdale testified that plaintiff's customer communication and customer relations skills were "inconsistent," but her communications with the clients themselves were "satisfactory." (Lansdale Dep. at 49.)

During her employment at Multiplan, plaintiff received yearly evaluations. Plaintiff's December 2001 performance evaluation rated her as "exceeds expectations" in Customer Focus. (O'Neill Decl. ¶ 8, Ex. G.) Plaintiff's December 2003 evaluation gave her credit for "regularly complet[ing] overdue tasks from home to ensure clients get files daily." (Id.) Plaintiff's 1999 and 2001 evaluations stated that plaintiff "is a dedicated employee and willing to provide the time when necessary even on short notice" (1999 evaluation) and "has proven herself with increased workload/additional tasks and responsibilities" and "takes initiative to fix problems with data processing procedures" (2001 evaluation). (Id.) Plaintiff was also recognized for technical aptitude in her 1998 and 1999 evaluations. (Id.) Plaintiff received an evaluation in December of 2003, shortly before her termination. (Id.) Her overall rating was "Performance Meets Expectations – meets all skill and performance requirements in a satisfactory manner; some skills may exceed expectations." (Id.) Her comments included, "[plaintiff] has been a helpful member of the EDI team for several years. She has a history of reliable performance of routine tasks, critical to EDI production file processing, and regularly completes overdue tasks from home to ensure clients get files daily." (Id.) It also stated that plaintiff "needs to work hard to learn X12 format" and needs to "be sure to communicate clearly, quickly, frequently, and diplomatically." (Id.) The final comment stated that plaintiff should have a "goal of good health and attendance next year." (Id.)

According to defendant, the decision to terminate plaintiff occurred prior to her disability leave, in the late summer/early fall of 2003. (Lansdale Dep. at 51; Harely Dep. at 10.) However, plaintiff was not terminated by the Management Team until January 30, 2004. (Compl. ¶ 19.) Lansdale testified that plaintiff was not terminated in late summer/early fall, when the decision was made, because "the purpose was to increase the skills set in the group . . . in several stages." (Lansdale Dep. at 53.) Harley and Gantek testified that plaintiff was not terminated when the decision was made because it seemed inhumane, or inappropriately timed, given plaintiff's accident. (Harley Dep. at 17; Gantek Dep. at 24.)

When plaintiff was terminated, plaintiff was told that Multiplan was downsizing the EDI Department and that plaintiff's job was eliminated. (Pl. Decl. ¶ 12.) She was forty-nine at the time. (Compl. ¶ 5.) Two of the three decision-makers who decided to

terminate plaintiff's employment, specifically Harley and Gantek, were over the age of forty. (Def.'s 56.1 ¶¶ 62, 63, 64; Compl. ¶ 5; Harley Aff. ¶¶ 1, 18.)

Subsequent to plaintiff's termination, two new employees were hired into the EDI Group. More specifically, in December 2004, approximately twelve months after plaintiff's termination, Rodney Holloway was hired from another Multiplan department into the EDI group. (Lansdale Dep. at 11.) Holloway is in his thirties. (*Id.* at 13.) On May 27, 2005, approximately eighteen months after plaintiff's termination, Multiplan hired Stanley Davidoff from another Multiplan department into the EDI group. (Lansdale Dep. at 10-11.) Davidoff is approximately in his twenties. (*Id.* at 11.) Both individuals were hired into the EDI Analyst I position.

As a result of her termination, plaintiff brought the present action alleging employment discrimination on the basis of her age and disability in violation of the Federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, the New York State Human Rights Law, N.Y. Exec. § 296(1), and the New York City Human Rights Law. Defendant now moves for summary judgment on all claims.

## II. SUMMARY JUDGMENT STANDARD

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)*; Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R. Co.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R.*

*Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

## III. DISCUSSION

### A. AGE DISCRIMINATION UNDER THE ADEA[2]

The ADEA states, it is "unlawful for an employer . . . to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Because plaintiff presents no direct evidence of discriminatory treatment based on her age, the Court reviews her ADEA claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (applying the *McDonnell Douglas* test where plaintiff did not present any direct evidence of the discriminatory treatment). To establish a *prima facie* case of age discrimination, a plaintiff must demonstrate that: "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone 'substantially younger.'" *Roge v. NYP Holdings, Inc*. 257 F.3d 164, 168 (2d Cir. 2001) (quoting *O'Conner v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once a plaintiff establishes a *prima facie* case of discrimination "the burden of production [shifts] to the defendant, who must proffer a 'legitimate, nondiscriminatory reason' for the challenged employment action." *Woodman*, 411 F.3d at 76 (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001)). If the defendant articulates a legitimate, nondiscriminatory reason, plaintiff must then prove that defendant's articulated reasons were pretextual. *See id.* at 76. "In short, the ultimate burden rests with the plaintiff to offer evidence 'sufficient to support a reasonable inference that prohibited [age] discrimination occurred.'" *Id*. (citing *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000)).

To meet this burden, the plaintiff may rely on evidence presented to establish her *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "McDonnell Douglas's minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James*, 233 F.3d at 157. Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell*, 109 F. Supp. 2d at 207-08.

---

[2] Claims of age discrimination brought under New York State law are analyzed using the same framework as claims brought under the ADEA, and the outcome under state law will be the same as the outcome under the ADEA. *See Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see Lapsley v. Columbia Univ.*, 999 F. Supp. 506, 513-16 (S.D.N.Y. 1998) (advocating elimination of *McDonnell Douglas* test in favor of simplified approach focusing on ultimate issue of whether sufficient evidence exists to permit jury to find discrimination); *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

## B. URANYI'S AGE DISCRIMINATION CASE

At the outset, the Court finds that plaintiff has made out the *prima facie* case required by *McDonnell Douglas* based on plaintiff's membership in the protected class, qualification for the job, her termination, and defendant's retention of an employee outside of plaintiff's protected class instead of plaintiff.[3]  In response, Multiplan has

---

[3] With respect to job qualification, the Second Circuit has held that "'McDonnell Douglas requires only a minimal showing of qualification to establish a prima facie claim. [A plaintiff] only needs to demonstrate that she possesses the basic skills necessary for performance of [the] job.'" *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006) (quoting *Owens v. New York City Housing Authority*, 934 F.2d 405, 409 (2d Cir. 1991)).  As addressed more fully in the analysis below, plaintiff has more than met this minimal showing.  Most noteworthy, however, is that plaintiff's immediate supervisor, Lansdale, stated in her deposition that plaintiff's "performance was good for the level that she could handle."

established a legitimate non-discriminatory reason for her dismissal, namely, that the EDI division was redesigned due to changing laws and client demands and that the plaintiff did not have the skills and experience to handle the new position.  Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find age discrimination by examining each party's evidence individually and then proceeding to evaluate the evidence as a whole. *See Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 742 (S.D.N.Y. 2005); *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997); *see also Siano v. Haber*, 40 F. Supp. 2d 516, 520 (S.D.N.Y.), *aff'd mem.*, 201 F.3d 432 (2d Cir. 1999); *Lapsley*, 999 F. Supp. at 515.

Defendant asserts that plaintiff was fired as a result of the redesigning of the EDI department to meet new legal standards and address the needs of a growing, more complex customer base.  (Harley Dep. at 10; Gantek Dep. at 18.)  Before the upgrading, the word EDI was not used in any titles.  (Gantek Dep. at 27; Yusupov Dep. at 15.)  In redesigning

---

(Lansdale Dep. at 43.)  Lansdale also testified that there were not any EDI Analyst I tasks that plaintiff was unable to do (Lansdale Dep. at 48) and Gantek testified that plaintiff was marginally qualified to be an EDI Analyst I.  (Gantek Dep. at 25.)  Furthermore, plaintiff's performance evaluation, conducted less than a month before her termination, rated plaintiff's overall performance as "Performance Meets Expectations."  (O'Neill Decl. ¶ 8, Ex. G.)  Based on these factors, plaintiff satisfies the qualification prong of her *prima facie* case.  With respect to the fourth prong, termination under circumstances giving rise to an inference of discrimination, the Court concludes that, again, that minimal burden has been established.  For example, as discussed more fully *infra*, a younger employee was retained over plaintiff and defendant subsequently hired several younger employees.

the department, defendant eliminated one of the EDI Analyst I positions, thereby leaving only one EDI Analyst I position.[4] Defendant asserts that it chose to retain Yusupov over plaintiff because he was a "better fit." (Harley Dep. at 29.) Defendant found that plaintiff's customer service skills and communication within the group were not as good as the Company needed them to be. (Lansdale Dep. at 49; Gantek 19-21; Flynn Dep. at 27.) There was also some testimony that plaintiff was excessive in her use of the privilege to work at home. (Gantek at 9-10.) In addition to plaintiff, another employee, Walter, was terminated when the EDI positions were re-defined and it was determined he was not qualified because he lacked customer relations skills and certain technical skills and was not considered a leader. (Harley Dep. at 14; Lansdale Dep. at 63; Gantek Dep. at 21-22.) Furthermore, there was testimony from Lansdale and Gantek, two of the individuals responsible for plaintiff's termination, that they called two other departments in an effort to see if another position in the Company was available for plaintiff. (Lansdale Dep. at 61; Gantek Dep. at 25.)

In response to defendant's motion for summary judgment, plaintiff points to evidence that she argues raises triable issues of fact that are sufficient to defeat a motion for summary judgment. As a threshold matter, plaintiff points to the fact that she was terminated in order to retain Yusupov, who was twenty-eight years old at the time. (Pl.'s Opposition at 19.) Plaintiff relies on *Schnabel v. Abramson*, where the Second Circuit held that "[t]he fact that [plaintiff] was replaced by a 31-year-old is sufficient to give rise to the inference that he was the victim of discrimination." 232 F.3d 83, 87 (2d Cir. 2000). Defendant argues that the situation differs from *Schnabel* because, here, plaintiff was not *replaced* by a 28-year old; rather, the younger employee was *retained* instead of her. *Id.* at 87. Although plaintiff was not *replaced* by the significantly younger employee, a discrimination claim can still be proven in connection with a termination decision, even when it occurs during a downsizing or reorganization when positions are being eliminated. In addition to the fact that the decision was made to retain a much younger employee over her, plaintiff points to several other categories of evidence to overcome defendant's summary judgment motion.

First, plaintiff argues that defendant has given conflicting reasons as to why Yusupov was chosen for the position over plaintiff. In particular, plaintiff points to the following deposition testimony: (1) Harley stated that Yusupov was a "faster learner" and a "better fit" (Harley Dep. at 27-29); (2) Gantek testified that the primary concern was that plaintiff worked from home too much and also expressed concern about her technical skills (Gantek Dep. at 9, 20); and (3) Lansdale, who was plaintiff's immediate supervisor, stated that plaintiff's job had been eliminated (Lansdale Dep. at 58.) Plaintiff further asserts that each of the articulated reasons for the decision are undermined by contradictory deposition testimony and performance evaluations. With respect to the customer communications skills, plaintiff points to deposition testimony by her supervisor in which she stated that plaintiff's customer communications were satisfactory. (Lansdale Dep. at 49.) Additionally, plaintiff's December 2001 performance evaluation rated her as "exceeds expectations" in Customer Focus. (O'Neill Decl. ¶ 8, Ex. G.) With respect to the assertion that she spent too much time working from home, plaintiff notes

[4] Defendant contends that it was already determined that plaintiff was not qualified for the EDI II position. (Harley Dep. at 29; Lansdale Dep. at 59; Gantek Dep. at 25.)

that, in December 2003, she was given credit for "regularly complet[ing] overdue tasks from home to ensure clients get files daily." (*Id.*) Plaintiff also points to her other evaluations where it was stated that plaintiff "is a dedicated employee and willing to provide the time when necessary even on short notice" (1999 evaluation) and "has proven herself with increased workload/additional tasks and responsibilities" and "takes initiative to fix problems with data processing procedures" (2001 evaluation). (*Id.*) In connection with plaintiff's technical skills, plaintiff notes that, in her 1998 and 1999 review, she was recognized for her technical aptitude. (*Id.*)

Second, in addition to asserting that plaintiff's alleged weaknesses were unsupported by the record, plaintiff also argues that her qualifications were objectively superior to Yusopov's. More specifically, plaintiff points to the following: (1) she had a bachelor's degree, an MBA and a diploma in computerized accounting as compared to Yuopov's two-year associate's certificate in accounting; (2) plaintiff had over thirty years of work experience, including nearly fifteen years in the area of medical claims, while Yusopov had only six years of work experience, with four years in medical claims; and (3) plaintiff had been working in computer related jobs at Multiplan since 1997, compared to 2000, for Yusopov.

Third, plaintiff argues that evidence demonstrates that replacing her with the 28-year old was just one part of a clear trend in the EDI department to replace older workers with younger workers. To support that argument, plaintiff points to evidence that, at the time of her accident, two of the three EDI analysts at Multiplan were over 40. After plaintiff and Walters were terminated, two of the three remaining EDI analysts were below 30. Moreover, in further support of this pattern argument, plaintiff points to the fact that, subsequent to plaintiff's termination, two

additional employees, both of whom are younger than plaintiff, and outside the protected class, were hired into the EDI group as EDI I Analysts. Plaintiff argues that this evidence is particularly probative where defendant did not even consider re-contacting plaintiff when the EDI Analyst I positions became available, twice after her termination. More specifically, plaintiff asserts that such failure contradicts the testimony from Gantek that he did not want her "knowledge [to] walk out the door", that it "was a benefit to the company keeping the knowledge", and that another department head informed him that plaintiff would be "take[en] . . . under consideration if something happened in the future or if he had an opening in the future." (Gantek Dep. at 25-26, 28-29.)

When viewed as a whole, the evidence creates genuine issues of material fact as to whether defendant's stated reason for terminating plaintiff was pretextual, and whether age was a factor in the termination decision. Namely, the conflicting reasons for the decision, other evidence undermining the credibility of those rationales from which a jury could infer discriminatory intent, the defendant's qualifications for the position as compared to those of Yusopov, and other hiring decisions within the EDI department create genuine issues of material fact.

The Court recognizes, as urged by the defendant, that it should not second-guess a non-discriminatory business judgment of an employer and that where an employer's clear and specific explanation "is reasonably attributable to an honest even though partially subjective evaluation . . . of qualifications, no inference of discrimination can be drawn." *Lieberman v. Gaunt*, 630 F.2d 60, 67 (2d Cir. 1980). However, the Second Circuit has also emphasized that "[w]hile the business judgment rule protects the sincere employer against second-guessing of the reasonableness of its judgments, it does not protect the employer against attacks on its credibility."

*Byrnie v. Town of Cromwell, Board of Education,* 243 F.3d 93, 105 (2d Cir. 2001) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1048 (11th Cir. 2000) (Birch, J., concurring in part and dissenting in part); *see also Stern*, 131 F.3d at 313 ("While we do not second-guess an employer's hiring standards, the reasons for its employment decision, including its alleged reliance on such standards are subject to scrutiny under Title VII").

Defendant argues that, even assuming there is evidence that the decision to terminate plaintiff was questionable, there is no evidence from which a jury could find that the decision was motivated by age discrimination. The Court disagrees. Plaintiff has proffered sufficient evidence from which a jury could conclude that, not only was the business decision to terminate not supported by the stated reasons, but that it was pretextual for age discrimination.

For example, in addition to the inference that can be drawn from the young age of the individual retained over plaintiff, the jury could rely on the defendant's decision, subsequent to plaintiff's termination, to hire two additional employees, both of whom are younger than plaintiff, and outside the protected class, into the EDI group as EDI I analysts without re-considering plaintiff for such position. Defendant correctly argues that it has no obligation to re-contact and re-hire an individual subsequent to termination. However, a jury can properly consider such a decision in the context of the entire record in determining the motivation of an employer. *See Montana v. First Federal Savings and Loan Assoc. of Rochester*, 869 F.2d 100, 105-06 (2d Cir. 1989) (finding it significant that as part of a purported reduction in force, after plaintiff's discharge, defendant increased the number of employees by three and failed to offer or consider plaintiff for the position). Such consideration is particularly appropriate in the instant case, even in the absence of a legal obligation to re-hire, where defendant claims that it tried unsuccessfully to find another position for plaintiff at the time of termination and there was some testimony from one department head that plaintiff would be considered "if something happened in the future or if he had an opening in the future." (Gantek Dep. at 28-29.)

Defendant also argues that the significant passage of time between plaintiff's termination and the subsequent hiring of the two new employees dispels any possible implication of age discrimination from that subsequent conduct. In particular, defendant points to evidence that these two hiring decisions took place one year and eighteen months, respectively, after plaintiff's termination. However, courts have found an inference of discrimination from such post-termination conduct within similar time frames. *See Gallo v. Purdential Residential Servs.*, 22 F.3d 1219, 1226-1227 (2d Cir. 1994) (denying employer's motion for summary judgement where, among other factors, employer failed to rehire plaintiff within nine months of her RIF termination); *Olivera v. Nestle Puerto Rico, Inc.*, 922 F.2d 43, 49 (1st Cir. 1991) *abrogated on other grounds by Cuello-Suarez v. Puerto Rico Elec. Power Authority*, 988 F.2d 275, 280 (1st Cir. 1993) (reversing a grant of summary judgment where employees over forty were replaced within two years by individuals under thirty). This Court similarly concludes that, despite the passage of time here, the evidence is still probative and a jury could properly consider the defendant's post-termination decision as it relates to plaintiff's age discrimination claim.

Defendant also cites *Viola v. Philips Med. Sys. of North America*, 42 F.3d 712 (2d Cir. 1994) for its position that no inference may be

drawn from the subsequent hires.[5] In that case, the Second Circuit held that the hiring of a new employee one year after plaintiff's termination "does not in and of itself cast any doubt on the economic necessity of the original termination decision." *Id.* at 718. This Court recognizes that the post-termination conduct in the instant case, by itself, would not be sufficient to cast doubt on defendant's proffered non-discriminatory reason for her dismissal. Here, however, plaintiff is not relying solely on the fact that the two new, younger employees, were subsequently hired one year and one year and eighteen months later; rather, plaintiff points to that evidence in conjunction with several other pieces of evidence which the Court finds, together, raise a triable issue of fact on the issue of pretext under the *McDonnell Douglas* test.

Finally, defendant argues that no inference of age discrimination can be drawn here because two of the three decision-makers were over forty-years old. *See Pisana v. Merrill Lynch & Co.*, 93 Civ. 4541(LMM), 1995 U.S. Dist. LEXIS 10296, at *14 (S.D.N.Y. July 24, 1995) ("The fact that these decision makers were close to Pisana's age, or older, weakens any suggestion of age discrimination."). The fact that two of the three decision-makers were over forty is some evidence of the intent of defendants, but not enough to undermine plaintiff's circumstantial evidence of discrimination, such that a motion for summary judgment would be warranted. *See Golia v. Leslie Fay Co.*, 01 Civ. 1111 (GEL), 2003 U.S. Dist. LEXIS 13794, at *14 (S.D.N.Y. Aug. 7, 2003) ("The ADEA's limitation of the protected class to persons 40 and older does not require that the alleged wrongdoer be younger than 40, as people over 40 are clearly capable of discriminating on the basis of age.").

In sum, although defendant has proffered arguments and evidence to rebut plaintiff's evidence of discrimination, the Court must draw all reasonable inferences in favor of the plaintiff at the summary judgment stage. Accordingly, under this standard, the Court concludes there is sufficient evidence to raise genuine issues of material fact concerning whether defendant's proffered reasons are pretextual and summary judgment on the age discrimination claim is denied.

## C. State Disability Claim

Plaintiff additionally alleges that she was terminated because of her disability in violation of the New York State Human Rights Laws ("NYSHRL") and the New York City Human Rights Laws ("NYCHRL"). Plaintiff does not bring her disability claim under the Americans with Disabilities Act.

In adjudicating claims under the Executive and City laws, "courts apply 'the familiar burden-shifting framework developed in *McDonnell Douglas Corp. v. Green.*'" *Garraway v. Solomon R. Guggenheim Found.*, 415 F. Supp. 2d 377, 385 (S.D.N.Y. 2006) (quoting *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 156 n.9 (2d Cir. 1998) (applying NYSHRL); *accord Dawson*

---

[5] Defendant cites several other cases for its position that subsequent hiring of two other employees is not significant to plaintiff's claim given the timing of the termination and subsequent hiring. It is noteworthy, however, that in each of the cases cited, plaintiff was terminated for misconduct or poor performance in connection with a downsizing. *See Prince v. Golub Corp.*, No. 5:03-CV-0672 (NPM), 2004 WL 2223070, at *2 (N.D.N.Y. Sept. 27, 2004) (plaintiff terminated for engaging in harassment of co-workers) and *Simpson v. Midland-Ross Corp.*, 823 F.2d 937 (6th Cir. 1987) (plaintiff's poor performance as a national accounts manager contributed to plaintiff's termination). Here, defendant has not pointed to any evidence of misconduct or poor performance reviews and thus, the subsequent hiring of younger employees could be construed by a trier of fact to cast doubt on defendant's termination decision.

*v. Bumble & Bumble*, 398 F.3d 211, 216-17 (2d Cir. 2005) (applying NYCHRL)). Accordingly, the Court applies the same burden shifting standards set forth above, with respect to plaintiff's age discrimination claim, to plaintiff's disability discrimination claim.

Again, the burden on plaintiff in establishing a *prima facie* case in an employment discrimination case is minimal and plaintiff has satisfied this burden. *Zimmermann.*, 251 F.3d at 381. Plaintiff has a disability, she was qualified for her job, she was terminated from her job, she was terminated immediately following an extended absence due to an injury in which she broke her polio brace, and a non-disabled employee was retained in her stead.

For all the reasons stated above with respect to plaintiff's age discrimination claims, the Court finds that a trier of fact could find that plaintiff was discriminated against on the basis of her disability. Specifically, as with the age discrimination claims, the conflicting evidence regarding the decision, plaintiff's qualifications for the position as compared to Yusopov, and the subsequent hiring of two less experienced employees into the EDI Analyst I position, can all be considered by the trier of fact in connection with the disability claim. In addition to the evidence in common with respect to her age discrimination claims, there is other evidence from which plaintiff can argue that she was discriminated based on her disability. More specifically, in plaintiff's declaration in opposition to defendant's motion, plaintiff states that she heard from Walter that Gantek had made a comment regarding plaintiff's absence while she was out on disability. In particular, she heard that Gantek said, "if she can wipe her ass, she can return to work." (Uranyi Decl. ¶ 6.) Furthermore, in plaintiff's performance review that she received upon her return from her disability leave, it stated that plaintiff should have "a goal of good health and attendance next year". (O'Neill Decl. ¶ 8, Ex. G.) Plaintiff could argue that this review is contrary to defendant's assertion that the termination decision was made prior to plaintiff's leave and a trier of fact could reject defendant's explanation that it made the decision to terminate plaintiff prior to her leave, but gratuitously decided to retain plaintiff until after she returned. Based upon this evidence, an inference of discrimination based on disability by the trier of fact would be permissible, especially where plaintiff was terminated almost immediately following her disability leave.

Accordingly, drawing all inferences in favor of plaintiff at this summary judgment stage, the Court finds that plaintiff has raised genuine issues of material fact with respect to her disability discrimination claim and defendant's motion for summary judgment is denied.

## IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment on the claims of age and disability discrimination is DENIED.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 12, 2006
Brooklyn, New York